IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RON NEWBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| MANNESMANN DEMATIC CORP., | ) | |
| and REBSTOCK CONVEYORS, INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | Civil No. 03-4020-JLF |
| REBSTOCK CONVEYORS, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| CONTINENTAL TIRE NORTH | ) | |
| AMERICA, INC., VERSA CORPORATION; | ) | |
| and TRING CORPORATION, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |
| MANNESMANN DEMATIC CORP., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| CONTINENTAL TIRE NORTH | ) | |
| AMERICA, INC.; VERSA CORPORATION; | ) | |
| TRING CORPORATION, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |
| MANNESMANN DEMATIC CORP., | ) | |
| | ) | |
| Crossclaimant, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| REBSTOCK CONVEYORS, INC., | ) | |
| | ) | |
| Crossdefendant. | ) | |

|  |  |
|---|---|
| **REBSTOCK CONVEYORS, INC.,** | ) |
| | ) |
| Crossclaimant, | ) |
| | ) |
| -vs- | ) |
| | ) |
| **MANNESMANN DEMATIC CORP.,** | ) |
| | ) |
| Crossdefendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Rebstock Conveyors' motion for summary judgment on Counts III and IV of the complaint (Doc. 63). Plaintiff has filed a response, (Doc. 84), and Rebstock Conveyors has filed a reply (Doc. 90).

**I.     Background.**

Plaintiff, Ron Newbury, worked at Continental Tire in Mt. Vernon, Illinois as a truck press operator in the "green tire," (i.e., unbaked tire), area. (Doc. 64, Exh. F, pp.24-27). At Continental's facility, green tires enter the green tire area on an overhead conveyor. (Doc. 64, Exh. B, p.14, Exh. F, p.28). This overhead conveyor is part of an overall conveyor system that was designed by Continental Tire and Versa Corporation. (Doc. 64, Exh. B, pp.6,15). This system is described as follows: As the green tires enter the green area, a three-fingered device, (supplied by the Tring Corporation), picks the green tires off the overhead conveyor, and then using a monorail system, (supplied by the Mannesmann Dematic Corporation), moves them to a cart, (a.k.a., a "buggy"). (Doc. 64, Exh. F, p.14, Exh. B, p.24). The "green area" includes twelve lanes of carts. (Doc. 64, Exh. F, p.24).

Empty carts enter this overall conveyor system by way of a chain conveyor, (a.k.a., a "cart indexing system"), that is contained in the floor. (Doc. 64, Exh. B, p.16). Rebstock Conveyors supplied this floor conveyor system. (Doc. 64, Exh. B, p.10). After the three-fingered device lowers a green tire onto a cart, then something called a leaf flipper turns the next leaf down on the cart so another green tire can be stacked onto the cart. (Doc. 64, Exh. B, p.10). Once a cart is full, the Rebstock floor conveyor pushes the cart out from under the three-fingered device and sends it all the way out of the overall conveyor system. (Doc. 64, Exh. B, p.12). At this point, the truck press operator uses a "tugger" or a "stand-up walkie" to take the cart over to the press area where the tires are baked. (Doc. 64, Exh. F, pp.26-27).

On December 17, 2000, plaintiff was working and a chain came off of track lane 11. (Doc. 64, Exh. M, p.17). Plaintiff went into the lane 11 area to replace the chain, and as he was leaving, a tire fell from above and hit him in the head. (Doc. 64, Exh. M, p.17). The conveyor system has a control panel that contains a stop button to shut down each individual lane in the event of a problem, but before going into Lane 11, plaintiff did not shut down the system. (Doc. 64, Exh. F, p.32; Exh. M, p.8). Continental Tire has a rule that before doing any maintenance or repair work on the machinery, workers must first shut down the system. (Doc. 64, Exh. M, p.8). Plaintiff did not shut down the system prior to performing this maintenance. (Doc. 64, Exh. M, p.8).

Plaintiff has sued Mannesmann Dematic Corporation, (Counts I,II), and Rebstock Conveyors, (Counts III,IV), for product liability and negligence. Plaintiff originally filed suit

in the Circuit Court, Jefferson County, Illinois, and Rebstock Conveyors removed it to this Court based on diversity of citizenship and over $75,000 in controversy.

Rebstock Conveyors then filed a third-party complaint against Continental Tire, Versa Corporation, and Tring Corporation (Docs. 18,24). Mannesmann Dematic Corporation then filed a third-party complaint against those same three parties, (Doc. 32), as well as a cross-claim against Rebstock Conveyors (Doc. 33). Rebstock Conveyors then filed a cross-claim against Mannesmann Dematic Corporation (Docs. 35,39).

Plaintiff has reached settlement agreements with Tring Corporation and Mannesmann Dematic Corporation. Accordingly, upon the parties' requests, and with no objections having been filed, this Court granted Tring and Mannesmann's motions for good faith settlements (Docs. 94, 96). Because Mannesmann Dematic Corporation has been terminated as a party, the only original claims of plaintiff that remain pending are Counts III and IV against Rebstock Conveyors. Defendant Rebstock's motion for summary judgment is discussed below.

## II.  **Summary Judgment Standard.**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *FED.R.CIV.P. 56*. The initial burden of showing that no genuine issue of material fact exists is on the moving party. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1996). Once the moving party has demonstrated the absence of any genuine factual issues, the nonmoving party, to withstand summary judgment, must present specific facts showing that a genuine issue exists

for trial. *FED.R.CIV.P. 56(e)*. A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 249 (1986).

### III. Discussion.

Plaintiff has filed this complaint against Rebstock Conveyors alleging that Rebstock sold the conveyor system to Continental Tire. Rebstock Conveyors has clarified the record, however, by noting that Versa Corporation was the entity that actually sold the conveyor system to Continental Tire. (See Doc. 64, Exh. D, Continental Tire's Purchase Order to Versa Corporation). Thereafter, Versa Corporation issued a purchase order to Rebstock Conveyors to subcontract some of the work. (Doc. 64, Exh. E). Specifically, Versa subcontracted Rebstock to complete two aspects of the overall conveyor system: 1) to design the in-floor cart indexing system, and 2) to oversee the installation of the entire conveyor system. The entire conveyor system included Rebstock Conveyor's in-floor cart indexing system, as well as the Tring device and the Mannesmann Dematic monorail.

Plaintiff has not alleged that Rebstock's in-floor cart indexing system was unreasonably dangerous or that it contributed to his injury. Plaintiff does, however, seek to impose liability upon Rebstock on the ground that as the installer of the overall conveyor system, it was therefore responsible for the overall safety of the entire system.

Here, however, Rebstock Conveyors did not design the overall conveyor system, it merely installed it, and the installation was done pursuant to specifications that were provided by Continental Tire and Versa Corporation. In a negligence setting, Illinois law is

clear that an installation contractor is not liable for the overall safety of a product that it installs according to another's specifications, unless the specifications are so obviously dangerous that no reasonable contractor would follow them. *Hunt v. Blasius*, 384 N.E.2d 368, 371 (1978) (*citing Restatement Second of Torts* § 404, comment (a) (1965); *Prosser on Torts*, § 104 at 681-682 (4th ed. 1971); *Am. Jur. 2d Independent Contractors* § 50 (1968)) ("If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them."). This principle has also been applied to products liability claims. *See Loos v. American Energy Savers, Inc.*, 522 N.E.2d 841, 845 (Ill.App.1988) (*citing S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.,* 690 F.2d 1235 (9th Cir.1982); *Lesnefsky v. Fischer & Porter Co.,* 527 F.Supp. 951 (E.D.Pa.1981); and *Orion Insurance Co. v. United Technologies Corp.,* 502 F.Supp. 173 (E.D.Pa.1980)).

      Plaintiff attempts to impose liability upon Rebstock Conveyors on the ground that it installed a system that was "obviously dangerous." Specifically, plaintiff notes that during installation, Rebstock personnel participated in safety discussions that involved consideration of using a guarding system. (Doc. 83, Exh. 1, Att. B, p.18). Plaintiff asserts that the fact that guarding discussions took place makes the absence of a guarding system an "obvious danger." In support, plaintiff's expert, Boulter Kelsey, testified that a guarding system would have been a relatively simple modification to the system and that it would have prevented plaintiff's injury. (Doc. 83, Exh. 1, Att. C, p.44). Finally, plaintiff also notes that Boulter

Kelsey testified that industry standards require that either spill guards or pan guards must be provided if the product may fall and personnel are present on the floor. (Doc. 83, Exh. 1, Att. C, p.45).

The Court notes, however, that Mr. Rebstock, president of Rebstock Conveyors, testified that although Rebstock participated in safety discussions that considered guarding, there was no area within Continental Tire's conveyor system where guarding would have been feasible. (Doc. 64, Exh. B, pp.5,18). In addition, Mr. Rebstock noted that Continental Tire had designated the location of plaintiff's accident in the specifications as a "non-operator area." (Doc. 64, Exh. B, pp.18-19). As support, Mr. Rebstock testified that Continental's designation of the area as a non-operator area was the very reason that Continental specifically asked Rebstock to design an in-floor cart conveyor that would index the carts away from the system so that no operators would need to be in the area when the overhead conveyor was loading the tires onto the carts. (Doc. 64, Exh. B, p.19).

Upon review of the record, plaintiff has failed to offer any evidence to indicate that no reasonable contractor would have followed the specifications that were provided to Rebstock to install the system. As aptly noted by Rebstock Conveyors, simply because Rebstock participated in safety discussions about guarding does not make them liable for a system that they did not design. Furthermore, simply because guarding was raised as a "possibility" does not mean the failure to implement guarding automatically imposes liability. To impose liability upon an installation contractor who followed another's specifications, plaintiff is required to show some evidence that the installer was not justified

in relying upon the specifications because "they are so obviously dangerous that no competent contractor would follow them." *Hunt*, 384 N.E.2d at 371. Finally, with regard to plaintiff's arguments regarding industry standards, plaintiff has offered nothing to indicate that the conditions actually required guarding or that at the time of installation, Rebstock was aware that in the future, workers would be allowed to enter what was designated at the time of installation as a non-operator area. For all of the above reasons, Rebstock Conveyors' motion for summary judgment is granted.[1]

### IV. Summary.

Based upon the above, Rebstock Conveyors' motion for summary judgment, (Doc. 63), is **GRANTED**. Plaintiff's claims against Rebstock Conveyors, and Counts III and IV of the complaint, (Doc. 2), are **DISMISSED** with prejudice. Mannesmann Dematic Corporation and Tring Corporation have already been dismissed with prejudice. (Docs. 94,98). Because Mannesmann Dematic Corporation and Rebstock Conveyors, (the original defendants), are dismissed, Mannesmann's and Rebstock's third-party actions, (Docs. 18,24,32), are dismissed with prejudice. Mannesmann's cross-claim against Rebstock Conveyors, (Doc.33), and Rebstock Conveyors' cross-claim against Mannesmann Dematic Corporation, (Docs. 35,39), are dismissed with prejudice. Accordingly, this action is

---

[1] Rebstock Conveyors also moves for summary judgment on the grounds that this action is barred by plaintiff's assumption of the risk, by plaintiff's misuse of the conveyor system, and by the Illinois Construction Statute of Repose, (i.e., that plaintiff either knew or should have known of the allegedly dangerous condition more than four years before the accident). The Court's resolution of the summary judgment motion makes discussion of these other grounds unnecessary.

**DISMISSED WITH PREJUDICE.**  Rebstock Conveyors' motion in limine, (Doc. 95), is

**MOOT**.  A separate Judgment shall accompany this Order.

    **IT IS SO ORDERED.**

    **DATED: May 24, 2005.**

                                  *s/ James L. Foreman*
                                      **DISTRICT JUDGE**